NO. 12-03-00278-CV
 
IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS
§APPEAL FROM THE 
IN THE MATTER OF
§COUNTY COURT AT LAW #3
G.W., A JUVENILE
§SMITH COUNTY, TEXAS
                                                                                                                                                            
MEMORANDUM OPINION
            Following a jury trial, G.W. was found to have engaged in delinquent conduct and was
ordered to be committed to the Texas Youth Commission (“TYC”) for an indeterminate period. On
appeal, G.W. challenges the factual sufficiency of the evidence to support the trial court’s order
committing him to TYC. We affirm.
 
Background
            On June 26, 2003, the State filed an original petition, alleging that on or about May 5, G.W.
committed the offense of criminal trespass. On July 14, the State amended its original petition to
include a charge of assault on a public servant. On August 5, G.W.’s case was tried to a jury. At
the conclusion of the trial, the jury answered “true” when asked if G.W. had committed the charged
offenses.
            That same day, after the trial and a disposition hearing, the trial court found that G.W. was
a juvenile who engaged in delinquent conduct and committed him to TYC for the following reasons:
 
1.The seriousness of the offenses require[d] that [G.W.] be placed in a restrictive environment
to protect the public.
2.[G.W.] has a history of aggressive behavior.
3.[G.W.] has a history of persistent delinquent behavior.
4.Local resources of the court are in adequate of [sic] properly rehabilitating [G.W.].
 
            In its order committing G.W. to TYC, the court made additional findings as follows:
 
1.It is in the child’s best interest to be placed outside the child’s home;
2.Reasonable efforts were made to prevent or eliminate the need for the child’s removal from
the home and to make it possible for the child to return home to the child’s home; and
3.The child, in the child’s home, cannot be provided the quality of care and level of support
and supervision that [sic] child needs to meet the conditions of probation. 


            G.W. now challenges the factual sufficiency of the evidence to support the trial court’s order
committing him to TYC for an indeterminate period.
 
Factual Sufficiency



Standard of Review
            Juvenile courts have broad discretion when determining the suitable disposition of children
who have engaged in delinquent conduct. In re M.A.L., 995 S.W.2d 322, 324 (Tex. App.–Waco
1999, no pet.). We review a juvenile court’s decision to see whether the court acted in an
unreasonable or arbitrary manner. In re C.L., 874 S.W.2d 880, 886 (Tex. App.–Austin 1994, no
writ). However, in reviewing the factual sufficiency of a trial court’s disposition order, we consider
and weigh all the evidence and set aside the judgment only if the finding is so against the great
weight and preponderance of the evidence as to be manifestly unjust. See In re J.D.P., 85 S.W.3d
420, 426 (Tex. App.–Fort Worth 2002, no pet.)
Applicable Law
            Section 54.04 of the Texas Family Code sets forth the parameters for committing a juvenile
to TYC. After a juvenile is adjudicated delinquent, a separate disposition hearing must be held. 
Tex. Fam. Code Ann. § 54.04(a) (Vernon Supp. 2004). If the trial court or jury finds that a child
has engaged in felony delinquent conduct and a disposition is required, a juvenile court may commit
a child to TYC without a determinate sentence. Tex. Fam. Code Ann. § 54.04 (d)(2) (Vernon Supp.
2004).
            If the court places the child on probation outside the child’s home or commits the child to
TYC, the court shall include in its order the determination that
 
1)it is in the child’s best interests to be placed outside the child’s home;
2)reasonable efforts were made to prevent or eliminate the need for the child’s removal from
the home and to make it possible for the child to return to the child’s home; and
3)the child, in the child’s home, cannot be provided the quality of care and level of support and
supervision that the child needs to meet the conditions of probation.


Tex. Fam. Code Ann. § 54.04(i)(1) (Vernon Supp. 2004). 
The Evidence
            At the beginning of the disposition hearing, the State offered G.W.’s predisposition report
into evidence. The report showed that on June 23, 2001, G.W. was charged with the offense of
aggravated assault with a deadly weapon but was found “not guilty” of the offense. On March 21,
2002, G.W. was “expelled from alternative education” and was placed on probation. On April 16,
2002, G.W. was charged with the offense of assault, but the charge was dropped the same day. On
May 29, the State charged G.W. with “violation of probation” and his probation was modified. On
June 17, he was charged again with “violation of probation” and the report states that his probation
was “consolidated.” On July 17, G.W. again was charged with violating his probation and his
probation was modified.
            Jay Zehren (“Zehren”), a juvenile probation officer, recommended that G.W. be committed
to TYC because he had failed to respond to the supervision the State had provided him in the past
in both a residential substance abuse facility and a secure residential placement. G.W. was
unsuccessfully discharged from both placements. Specifically, G.W. was placed on probation on
May 28, 2002 for being expelled from alternative education. G.W. was then placed in Azleway, a
substance abuse facility, on June 5. His probation was also extended until March 4, 2003. Zehren
further testified that G.W. was detained the day after he was placed on probation because he violated
that probation by disobeying the school rules at “JJAEP” when he cursed the staff and refused to
participate in physical education. At the time G.W. was placed in Azleway, he had been screened
for drug usage and tested positive. On June 17, 2002, G.W. was discharged from Azleway for failing
to follow the rules, but was accepted back shortly thereafter. G.W. was finally discharged from
Azleway on July 17 for repeatedly violating the rules. 
            After his second discharge from Azleway, G.W. went back to juvenile detention, where he
remained until his probation was modified on August 8. At that time, he went to Marvin A. Smith,
a secure residential juvenile placement that is operated by the Gregg County Juvenile Probation
Department. G.W. was then discharged on September 23 for “numerous rule violations, threats of
self-harm, things of that nature.” When G.W. was discharged from Marvin A. Smith, he did not go
back to detention because the juvenile probation department concluded that “there were no other
resources available to [them] at that time based on the level of offense that he had.” Zehren also
stated that the probation department had G.W. released from probation and the probation terminated
because it had sent G.W. to failed placements. 
            When questioned by G.W.’s attorney, Zehren testified that prior to G.W.’s criminal trespass
charge in May of 2003, G.W. was not referred to the probation department. G.W. had also never
been on intensive supervision probation or an electronic monitor. According to Zehren, the trial
court could alternatively choose to order G.W. to “show cap” probation. 
            J.W., G.W.’s mother, stated that G.W. successfully finished juvenile probation. She also said
that G.W. had been taking Ritalin since the second grade and that she decided to stop giving the
Ritalin to G.W. right before he was placed on probation and sent to Azleway. J.W. testified that she
lives in a home in Smith County and that she had a phone line available if the court decided to place
G.W. on an electronic monitor. She would also be willing to cooperate with the probation
department by supervising G.W. if the court decided to put him on intensive probation or “show cap”
probation. In J.W.’s opinion, it would be in G.W.’s best interest if he remained in the community
and was not sent to TYC. 
            G.W. testified in his own defense and stated that during the time he was on probation, he
never thought about being committed to TYC. He said that he wanted to change his life and wanted
another chance to do so. If he were to be put on probation, he would “put his mind to it” and follow
the rules. 
            At the conclusion of the hearing, the court found that G.W. was a juvenile in need of
rehabilitation and protection and that the public needed protection from him; therefore, it committed
G.W. to TYC for an indeterminate period.
Analysis
            The jury found that G.W. committed the third-degree felony offense of assault on a public
servant; therefore, the court had the option of committing G.W. to TYC. See Tex. Pen. Code Ann.
§ 22.01(b) (Vernon Supp. 2004); Tex. Fam. Code Ann. § 54.04(d)(2) (Vernon Supp. 2004).
            With regard to the actual disposition order, the evidence shows that reasonable efforts were
made to prevent or eliminate the need for G.W.’s removal from the home when G.W. was placed
in juvenile residential centers in the East Texas area; however, G.W. was discharged from each of
these centers for failing to follow rules, cursing staff, and threatening self-harm. The evidence also
reflects that G.W. cannot receive the level of support and supervision that he needs to meet the
conditions of his probation because he assaulted a police officer while he was living at home after
being discharged from the detention centers. Furthermore, the proof adduced at the disposition
hearing demonstrates that it would be in G.W.’s best interest to be placed outside his home because
he needs discipline. This is evidenced by his unsuccessful discharge from the treatment centers for
failure to follow the rules and his criminal trespass and assault on a public servant convictions.
Accordingly, the trial court’s order committing G.W. to TYC was not so against the great weight and
preponderance of the evidence as to be manifestly unjust. See In re J.D.P., 85 S.W.3d at 429. 
G.W.’s sole issue is overruled. 
 
Disposition
            The judgment of the trial court is affirmed.
 
                                                                                                    DIANE DEVASTO 
                                                                                                                 Justice
 
Opinion delivered September 30, 2004.
Panel consisted of Worthen, C.J., Griffith, J., and DeVasto, J.


(PUBLISH)