# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00242-CV

### In the Matter of I. P.

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT
## NO. J-21,768, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

I.P. appeals from the juvenile court's order committing him to the custody of the Texas Youth Commission ("TYC"). In two issues, I.P. contends that the commitment order is deficient because it does not state specifically the reasons for the modification and that the court abused its discretion by committing him to TYC. *See* Tex. Fam. Code Ann. § 54.05(i) (West Supp. 2005). Because we conclude that the order modifying probation is not deficient and that the district court did not abuse its discretion, we affirm the district court's order.

## BACKGROUND

On January 28, 2005, I.P. was placed on nine months' probation for a state jail felony graffiti charge. One term of I.P.'s probation required him to enroll at the Alternative Learning Center ("ALC") and attend every class on each school day. Disciplinary suspension from school was

considered an unexcused absence.  I.P. did not enroll at ALC on January 28, 2005, and did not attend class during the week of January 31 through February 4, 2005.  On February 7, 2005, I.P. enrolled at ALC and attended class.  At the end of that first day, he was approached by the assistant principal, who had noticed gang-related tattoos on the back of I.P.'s legs.  She informed him that he could not wear shorts to school and that he should wear long pants to cover up his tattoos.  I.P. responded by cursing repeatedly at the assistant principal.  As a result of this outburst, I.P. was suspended from school for two days.

On February 15, 2005, the State filed a motion to modify disposition.  The motion alleged that I.P. violated the terms of his probation when he was suspended from school on February 7, 2005.  The motion also alleged two other probation violations: testing positive for marihuana on February 8, 2005, and failing to attend ALC as directed.  At a hearing on February 28, 2005, the State waived the latter two violations, and I.P. admitted to the probation violation concerning his suspension from school.  The court then heard evidence regarding sentencing.

I.P.'s probation officer testified that I.P. had been on probation in 2002 for multiple burglaries.  This past history of delinquency, combined with I.P.'s recent probation violations, prompted the probation officer to conclude that commitment to TYC would be in I.P.'s best interest.  The district court committed I.P. to TYC.  But the court suspended its order until March 21 to give I.P. an opportunity to "change a little bit."  The court informed I.P. that, if his behavior improved, he would be allowed to remain on probation instead of being committed to TYC.

At the hearing on March 21, 2005, I.P.'s probation officer testified that since the February 28, 2005 hearing, he had received a police report stating that I.P. and six others were

2

observed exiting a vehicle that had been stolen and pushed into a drainage ditch. According to the probation officer, I.P. was not arrested in connection with this incident. I.P. testified that one of the individuals involved in the stolen car incident was "supposedly" on probation, but I.P. denied knowing that the conditions of I.P.'s probation prohibited him from associating with someone who was on probation. The court also heard testimony that, since the February 28 hearing, I.P. had again been a disciplinary problem at school. He was removed from his classroom for being "noncompliant" and "disruptive," and after being taken to the school office, continued to be rude and insubordinate. At the conclusion of this second hearing, the district court committed I.P. to TYC for an indeterminate amount of time, not to extend past I.P.'s 21st birthday. The court's order stated:

> "The Respondent [I.P.] will not accept parental supervision and has demonstrated a disregard for all authority. [I.P.], in [I.P.'s] home, cannot be provided the quality of care and level of support and supervision that [I.P.] needs to meet the conditions of probation. All reasonable efforts were made to prevent or eliminate the need for [I.P.'s] removal from home and to make it possible for [I.P.] to return home. The Court further finds that [I.P.] has been removed from his home and the Court approves of the removal. The court further finds that the local resources of this Court are not adequate to meet such needs or accomplish the necessary protection of the public."

This appeal followed.

## DISCUSSION

I.P. brings two issues on appeal. He first asserts that the trial court's order modifying his disposition is deficient for failure to comply with Texas Family Code section 54.05 because it does not "specifically" state the reasons for the modification. *See* Tex. Fam. Code Ann. § 54.05(i). In his second issue, he urges that the trial court abused its discretion by committing him to TYC.

3

**Standard of review**

Juvenile courts have broad discretion to determine a suitable disposition for children who have engaged in delinquent conduct. *In re A.I.*, 82 S.W.3d 377, 379-80 (Tex. App.—Austin 2002, pet. denied). Absent an abuse of discretion, we will not disturb a district court's decision. *In re M.S.*, 940 S.W.2d 789, 791 (Tex. App.—Austin 1997, no writ). In reviewing the trial court's ruling for an abuse of discretion, we examine whether the court acted without reference to guiding rules or principles. *In re C.L.*, 874 S.W.2d 880, 886 (Tex. App.—Austin 1994, no writ). We must determine whether the trial court acted in an unreasonable or arbitrary manner. *Id.* We may not reverse for abuse of discretion, even if we might disagree with the trial court's decision, as long as the decision was within the trial court's discretionary authority. *Id.* I.P. "acknowledges that the evidence was factually and legally sufficient to find that he violated the conditions of his probation." Therefore, the only issue before us is whether the trial court acted arbitrarily or unreasonably in modifying its disposition.

**Specificity of the district court's order**

Texas Family Code section 54.05(i) states "[t]he court shall specifically state in the order its reasons for modifying the disposition . . . ." Tex. Fam. Code Ann. § 54.05(i). This requirement ensures that appellate courts can determine whether the evidence supports the reasons recited in the court's order and whether those reasons are sufficient to justify the disposition. *In re L.R.*, 67 S.W.2d 332, 336-37 (Tex. App.—El Paso 2001, no pet.); *see also In re J.R.*, 907 S.W.2d 107, 110 (Tex. App.—Austin 1995, no writ). The requirement also assures that the child will have

4

notice of the court's reasons for modifying the disposition and will be in a position to challenge them on appeal. *In re J.R.*, 907 S.W.2d at 110. Statutory recitals in an order, by themselves, do not suffice as the required reasons for a court's ruling. *In re J.T.H.*, 779 S.W.2d 954, 959 (Tex. App.—Austin 1989, no writ). But tracking statutory language in an order, when supplemented with additional findings, is sufficient to meet the requirement of section 54.05(i). *See id.* (considering Texas Family Code § 54.04(f) which contains language identical to that in section 54.05(i)). In *In re J.T.H.* this Court considered a district court's order that contained statutory recitals from section 54.04(c) but added: "Considering the seriousness of the offense, all the circumstances surrounding the offense and the protection of the public, it is in the child's best interest to be placed outside the home." *Id.* at 959. We held that, although the order consisted largely of statutory language, the inclusion of the sentence assessing the offense and the circumstances surrounding it sufficed as specific reasons for the court's disposition. *Id.*

Here, the statutory recitals in the district court's order were supplemented by the court's findings that "[I.P.] will not accept parental supervision and has demonstrated a disregard for all authority" and that the "local resources of [the] court are not adequate to meet [I.P.'s] needs or accomplish the necessary protection of the public." These findings are supported by evidence that, while I.P. was living at home his parents were unable to prevent his marihuana use, his association with others who were on probation, and his participation in an incident involving a stolen vehicle. The record also shows that I.P. continued to be a disciplinary problem at ALC, despite being informed that his conduct would determine whether he remained on probation or was committed to TYC. Furthermore, I.P.'s probation officer testified that I.P. had been through most

5

of the programs offered as alternatives to TYC, including intensive supervision and probation. He opined that commitment to TYC would be in the best interest of I.P. and the community.

Because the statutory language was supplemented by additional reasons that find support in the record, we conclude that the order was sufficiently specific to satisfy section 54.05(i). I.P.'s first point of error is overruled.

**Commitment to TYC**

The dual policy goals of the juvenile justice code are protecting the public and rehabilitating juvenile offenders. *See* Tex. Fam. Code Ann. § 51.01 (West 1995). Whenever possible, rehabilitation should occur in a family environment. *Id.* § 51.01(5). However, when there is a history of delinquent behavior and a juvenile refuses to obey authority, rehabilitation in a family environment may not be appropriate. I.P. had previously been placed on probation for multiple burglaries in 2002. He admitted that he violated his probation by being suspended from school. I.P. was given a second chance to remain on probation rather than be committed to TYC, if he improved his behavior after the February 28, 2005 hearing. Despite the court's admonitions, during the three weeks between the February and March hearings, I.P. was once again disciplined at school for being disruptive in class and refusing to obey school authorities. During the same three-week period, I.P. was seen exiting a stolen vehicle and associated with an individual who was on probation.

Texas Family Code section 54.05(f) states that a court may modify its disposition to commit a child to TYC if it finds from a preponderance of the evidence that the child violated the court's reasonable and lawful order. Tex. Fam. Code Ann. §54.05(f) (West Supp. 2005). I.P. admitted to violating his probation by his suspension from school on February 7, 2005. I.P. violated

6

a reasonable and lawful court order and continued his delinquent conduct during the attempt to rehabilitate him in his family environment. Section 54.05(f) authorized the district court to commit him to TYC for violating the order. Therefore, hold that the district court acted in accordance with a guiding legal principle in committing I.P. to TYC. *See In re C.L.*, 874 S.W.2d at 886. Moreover, it was reasonable for the district court to determine that rehabilitation of I.P. in a family environment was inappropriate based upon his continued delinquency and the violations of his probation conditions. For these reasons, we conclude that the district court did not abuse its discretion by committing I.P. to TYC. We overrule I.P.'s second issue.

## CONCLUSION

Having overruled both of I.P.'s issues, we affirm the district court's order.

_____

Bob Pemberton, Justice

Before Chief Justice Law, Justices Pemberton and Waldrop

Affirmed

Filed: June 15, 2006

7